UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TYRONE CLOFER | CIVIL ACTION |
| VERSUS | NO. 23-6268 |
| DA JOSEPH CONNICK SR., *et al.* | SECTION M (2) |

## ORDER & REASONS

Defendants Eric Dubelier, Joseph Iuzzolino, and Jacob Frenkel each file a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.[1] Plaintiff Tyrone Clofer responds in opposition to two of the motions,[2] and Frenkel replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons, granting all three motions and dismissing with prejudice Clofer's claims against Dubelier, Iuzzolino, and Frenkel.

## I. BACKGROUND

Plaintiff Clofer, proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 alleging that defendants, various former Orleans Parish District Attorneys (including Dubelier, Iuzzolino, and Frenkel) and other public officials and entities, violated his constitutional rights in the course of vindictively prosecuting him for a murder that occurred in 1986.[4]

Plaintiff alleges that all defendants conspired to violate his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. The

---

[1] R. Docs. 36; 39; 44.
[2] R. Docs. 43; 46.
[3] R. Doc. 51.
[4] R. Doc. 30.

1

alleged conduct that violated these rights included being held in custody on two bonds for the same conduct, being simultaneously charged with violating Louisiana's manslaughter and second-degree murder statutes, spending 36 years in Louisiana state prison for a charge that he was not arrested for or booked on, and spending 36 years in prison due to vindictiveness and malicious prosecution.[5]

The alleged actions and roles of the three moving defendants are particularly important here. All three – Eric Dubelier, Joseph Iuzzolino, and Jacob Frenkel – are former assistant district attorneys in Orleans Parish. In the complaint, Clofer alleges that these three defendants conspired, with others, to commit fraud and suborn perjured testimony.[6] He also asserts that Dubelier filed a bill of information accusing him of manslaughter.[7] Plaintiff alleges that Iuzzolino initially screened the case and accepted the charges of manslaughter, later presented the second-degree murder indictment to a grand jury, screened the case again and accepted the charge of second-degree murder, and following the second indictment, persuaded the court that he was released from custody causing the court to order an *alias capias* warrant and issue a bond of one million dollars.[8] Plaintiff does not allege any facts against Frenkel in the operative complaint.[9]

Clofer requests declaratory relief against the defendants for deliberately and knowingly making false allegations that he was released from custody causing the trial judge to issue an *alias capias* warrant and ordering the million-dollar bail, for deliberately and knowingly inducing the coroner to perjure himself on the stand, for deliberately and knowingly charging him with

---

[5] *Id.* at 7.
[6] *Id.* at 2.
[7] *Id.* at 2, 4.
[8] *Id.* at 4-6.
[9] In his memoranda in opposition to Iuzzolino's and Frenkel's motions to dismiss, Clofer asserts more facts related to Frenkel's involvement. He asserts that Frenkel orally requested a continuance on the day of trial without specifying why the continuance was requested. The continuance followed plaintiff's refusal of the plea agreement for the manslaughter charge and preceded the second-degree murder charge. R. Docs. 43-1 at 3; 46 at 2-3.

manslaughter and second-degree murder simultaneously, and for deliberately and knowingly holding him simultaneously on two bonds for the same offense.[10] Plaintiff also requests financial compensation in the amount of one billion dollars.[11]

Dubelier, Iuzzolino, and Frenkel move to dismiss the claims against them. Dubelier moves to dismiss the matter under Rule 12(b)(6) for failure to state a claim, prescription, and absolute immunity, and under Rule 12(b)(5) for insufficient service.[12] Iuzzolino also moves to dismiss the matter under Rules 12(b)(5) for insufficient service and Rule 12(b)(6) for failure to state a claim and absolute immunity.[13] And, similarly, Frenkel moves to dismiss the matter under Rule 12(b)(6) for failure to state a claim and absolute immunity.[14]

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

---

[10] R. Doc. 30 at 8.
[11] *Id.*
[12] R. Doc. 39.
[13] R. Doc. 36.
[14] R. Doc. 44.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir.

2012)). A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

Courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, 353 F. App'x 949, 952 (5th Cir. 2009). Even a liberally construed *pro se* complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

## III.  ANALYSIS

### A. Absolute Immunity for § 1983 Claims

Plaintiff fails to state a claim for damages under 42 U.S.C. § 1983 because the three moving defendants' alleged actions are protected by absolute immunity.[15] Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under color of state law. 42 U.S.C. § 1983; *see also Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a claim under § 1983, a plaintiff must (1) allege a violation of the Constitution or federal law, and (2) demonstrate

---

[15] Clofer does not specifically state a claim for 42 U.S.C. § 1983 in his complaint. Instead, he claims that it "is a civil rights action under 28 U.S.C. § 1343(3)." R. Doc. 30 at 1. While § 1343 provides federal courts jurisdiction to hear claims for the deprivation of any right under color of state law, § 1983 authorizes private suits and provides the substantive cause of action. In his opposition, Clofer categorizes this suit as "a § 1983 action." R. Doc. 43-1 at 1. Under the pleading standard for *pro se* parties, then, the Court reads in a cause of action under § 1983.

5

that the alleged violation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215 (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

Prosecutors have absolute immunity from § 1983 liability for damages when the conduct complained of is "'intimately associated with the judicial phase of the criminal process.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). But absolute immunity does not protect prosecutors "engaged in ... investigative or administrative tasks." *Id.* at 342 (citing *Imbler*, 424 U.S. at 431 n.33). To determine whether a prosecutor is entitled to absolute immunity, a court "distinguishes between (1) actions taken 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of the prosecutor's role as an advocate for the State,' and (2) 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Singleton v. Cannizzaro*, 956 F.3d 773, 779-80 (5th Cir. 2020) (alteration omitted) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). This functional test "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Buckley*, 509 U.S. at 271.

Prosecutorial immunity applies to the alleged actions here because all of them took place during the judicial phase of criminal proceedings. The Fifth Circuit has held that prosecutorial immunity protects judicial tasks such as deciding to file or not file criminal charges, *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009), so Iuzzolino is immune for allegedly screening and accepting the cases. Additionally, prosecutorial immunity applies to conduct in front of the grand jury, *Cook v. Hous. Post*, 616 F.2d 791, 793 (5th Cir. 1980), so Iuzzolino is also immune for allegedly presenting the second-degree murder indictment to the grand jury. Prosecutorial immunity applies to a prosecutor's decision to file a bill of information, *Pugh v. Par. of St.*

6

*Tammany*, 875 F.2d 436, 437-38 (5th Cir. 1989), so Dublier is immune for allegedly filing the bill of information for manslaughter.  Filing an arrest warrant is protected by absolute immunity, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), so Iuzzolino is immune for allegedly causing the court to order an *alias capias* warrant.  Asking for a continuance occurs in the course of the prosecutor's role as an advocate for the State, so prosecutorial immunity protects that conduct.  *See Harrison v. Abraham*, 1997 WL 256970, at *19 (E.D. Pa. May 16, 1997) ("Prosecutorial immunity 'encompasses the presentation to a court of a motion for continuance.'" (quoting *Slaughter v. City of Phila.*, 1995 WL 12060, at *4 (E.D. Pa. Jan. 12, 1995)).  Therefore, even if Frenkel's alleged actions were included in the complaint,[16] he would be entitled to prosecutorial immunity as well.  To the extent plaintiff alleges that the moving defendants coerced or accepted perjured testimony, those actions are also covered by prosecutorial immunity, *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) ("[P]rosecutorial immunity extends to a prosecutor's actions ... even where the prosecutor knowingly used perjured testimony."); *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003) (holding that "the suppression of exculpatory evidence is shielded by absolute immunity"), and these defendants are accordingly immune.

The Court therefore finds that all three defendants are entitled to absolute immunity regarding plaintiff's § 1983 claim.

### B. Immunity from State-Law Claims of Vindictive Prosecution and Fraud

Defendants are also immune from plaintiff's state-law claims to the extent that he attempts to state a claim for vindictive prosecution and fraud.  The Louisiana supreme court recognizes a similar scope of prosecutorial immunity as federal immunity, noting that the Louisiana courts have "harmonized [Louisiana's] state [prosecutorial] immunity rules with federal immunity principles

---

[16] *See supra* note 9.

in the past." *Knapper v. Connick*, 681 So. 2d 944, 947 (La. 1996). As in the federal system, in Louisiana, "[t]he focus of absolute prosecutorial misconduct is not on the harm suffered or the identity of the injured party. Instead, the focus is on whether the prosecutor's conduct is intimately associated with the judicial process of the prosecution and occurred while the prosecutor was acting within the role of a prosecutor." *Jameson v. Montgomery*, 366 So. 3d 1210, 1223 (La. 2023). Additionally, prosecutorial "immunity applies irrespective of a prosecutor's motive." *Id.* at 1226. As reviewed above, all of the moving defendants' alleged actions took place within the judicial process of prosecution and so these defendants are immune from any state-law claim plaintiff intended to plead or could have pleaded.

### C. No Standing for Declaratory Relief

While these defendants are immune from damages under absolute prosecutorial immunity, they are not immune from declaratory relief. *S. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736-37 (1980) (determining that prosecutors can be targets of § 1983 declaratory relief). But Clofer is not entitled to the declaratory relief sought. He fails to state a claim that any of the identified actions violated his constitutional rights.

Plaintiff's request for declaratory relief seeks a declaration that defendants knowingly violated the United States Constitution.[17] "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*,

---

[17] R. Doc. 30 at 8.

341 F.3d 352, 358 (5th Cir. 2003). "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id*. "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (alteration in original).

Plaintiff lacks standing here because there is no substantial likelihood or real and immediate threat that he will face injury from the moving defendants in the future. Clofer does not, and cannot, allege that he will be subject to substantial and continuing controversy in the future. The Orleans Parish District Attorney's Office explicitly declined to re-prosecute this case following his release.[18] Additionally, the three moving defendants no longer work for the Orleans Parish District Attorney's Office,[19] rendering it unlikely that Clofer will face a repeated injury or continued controversy. Hence, plaintiff is not entitled to declaratory relief.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Rule 12(b)(6) motions to dismiss filed by Dubelier, Iuzzolino, and Frenkel (R. Docs. 36; 39; 44) are GRANTED, and plaintiff's claims against them are DISMISSED WITH PREJUDICE.[20]

---

[18] R. Doc. 39-2.
[19] R. Docs. 36-1 at 14; 39-1 at 11; 44-1 at 1.
[20] Because the claims are dismissed with prejudice under Rule 12(b)(6), the Court need not reach Dubelier's or Iuzzolino's motions made pursuant to Rule 12(b)(5). Further, the Court notes that plaintiff was granted leave to file a second amended complaint to properly name the State of Louisiana as a defendant, but he was directed not to make any other alterations to the first amended complaint. R. Doc. 55. Clofer is hereby further directed to omit from the anticipated second amended complaint the claims against Dubelier, Iuzzolino, and Frenkel that have been dismissed with prejudice by this Order & Reasons.

New Orleans, Louisiana, this 21st day of November, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE